IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CV-121-FL

| | | |
|---|---|---|
| ABBY GAIL LOCKLEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| KENNETH SEALEY, SHERIFF OF | ) | |
| ROBESON COUNTY, NORTH | ) | |
| CAROLINA, and ROBESON COUNTY, | ) | |
| NORTH CAROLINA, | ) | |
| | ) | |
| Defendants. | | |

This matter comes before the court on defendants' motion for summary judgment (DE # 24).

Plaintiff responded in opposition, and defendants filed a reply. In this posture, the issues raised are

ripe for review. For the following reasons, the court grants the motion for summary judgment.

## STATEMENT OF THE CASE

Plaintiff's amended complaint appears to allege three causes of action: 1) that defendants

discriminated against her on the basis of her gender and race, in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; 2) that defendants subjected her to

unequal treatment based upon her race, in violation of 42 U.S.C. §§ 1981 & 1981a; and 3) that

defendants retaliated against her after she complained of unlawful discrimination, in violation of

Title VII and §§ 1981 & 1981a.[1]

---

[1] Plaintiff's amended complaint lacks a distinct "Causes of Action" section which clearly states which alleged actions of defendants are challenged pursuant to specific provisions of federal law. Instead, the amended complaint presents a "Facts" section which includes plaintiff's allegations and citations to various federal statutes in separately
(continued...)

On October 29, 2010, defendants[2] answered the amended complaint, denying liability. Following discovery, defendants filed a motion for summary judgment on September 30, 2011. Defendants argue, *inter alia*, that plaintiff has not produced sufficient evidence of discrimination or retaliation to submit her claims to a jury. Plaintiff responded in opposition, arguing that she has alleged a *prima facie* case of discrimination and retaliation and that any reasons given by defendants for their adverse employment actions are pretextual. Defendants timely replied.

### STATEMENT OF THE FACTS

The undisputed facts, viewed in the light most favorable to plaintiff, are as follows. Plaintiff is female and Native American, a member of the Lumbee Indian Tribe. Amend. Compl. ¶ 4. Plaintiff attained an associate's degree in police science from Robeson Community College in 1981. Deposition of Abby Gail Locklear ("Locklear Dep.") 9, ex. 3 to Defs.' Mem. Plaintiff began working for the Robeson County, North Carolina, Sheriff's Department in 1987 on a part-time basis. Id. at 10. Plaintiff worked in the jail. Id. After about a year, plaintiff became a full-time employee, and in 1995 she was promoted to the rank of deputy and began working on the "road squad," or patrol. Id. at 10-11. Plaintiff was promoted to the rank of sergeant during the administration of Sheriff Glen Maynor, the predecessor to defendant Sheriff Sealey. Id. at 12. In 2003, plaintiff was placed in charge of the "warrant division" by Sheriff Maynor. Id. In 2005, Sheriff Sealey promoted

---

[1](...continued)

numbered paragraphs. The above recitation of plaintiff's causes of action is the court's best effort at leniently construing the amended complaint.

[2] Although plaintiff brought suit against both Robeson County, North Carolina, and the Sheriff of Robeson County, she has abandoned her claims against the County. See Pl.'s Mem. 1 n.1.

2

plaintiff to the rank of first sergeant and she retained her leadership role in the warrant division. Id. at 13.

Beginning in approximately October 2006, plaintiff expressed to Sheriff Sealey her interest in a promotion to the rank of lieutenant. Id. at 40-41. In early 2007, plaintiff specifically requested that she be considered for promotion to a lieutenant vacancy created by the retirement of Lt. Glenn Strickland, then the head of the Department's Civil Division. Affidavit of Sheriff Kenneth Sealey ("Sealey Aff.") (D.E. # 26) at ¶ 13. Other than this instance, plaintiff did not apply for any specific lieutenant position, instead relying on the generalized interest in promotion she had conveyed to Sheriff Sealey. Locklear Dep. 96; Sealey Aff. at ¶ 16. In the years since plaintiff began seeking promotion to the rank of lieutenant, Sheriff Sealey has promoted at least seven males to the rank of lieutenant in order to fill specific vacant positions. Sealey Aff. ¶¶ 13-17.[3] Beginning in 2008, Sheriff Sealey also sought to promote plaintiff, along with all other first sergeants, to the rank of lieutenant in order to afford them increased pay relative to that of the "line" sergeants, whom they often supervised but with whom they were positioned on the same pay grade. Sealey Aff. ¶ 19; Locklear Dep. 26. Sheriff Sealey's request was rejected by the County Board of Commissioners, but he has renewed the request every year since. Sealey Aff. ¶ 20. At least two of the males identified by plaintiff as having received promotions at her expense are Lumbee, like plaintiff, and one of the Department's thirteen lieutenants is, like plaintiff, a Lumbee female. Sealey Aff. ¶¶ 9-11.

Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 4, 2007. In the charge, plaintiff alleged that Sheriff Sealey denied

---

[3] In her response to defendants' interrogatories, plaintiff indicated that eight males had been promoted to lieutenant. See Ex. 4 to Defs.' Mem. at 8. However, Sheriff Sealey asserts that one of the men she identified, Richie Adams, was not promoted to the rank of lieutenant. Sealey Aff. ¶ 17(f).

3

her a promotion to lieutenant, subjected her to disparate treatment, and targeted her for unwarranted investigations. Charge of Discrimination, ex. 1 to Defs.' Mem. Plaintiff asserted that this alleged discrimination was as a result of her "sex, female, and race, Native American Lumbee[.]" Id. The EEOC investigated the charge and ultimately determined that the available evidence did not support her claims of discrimination. Plaintiff was issued a right-to-sue letter on February 26, 2008. At the time of her deposition in this case she was still employed with the Robeson County Sheriff's Department. Locklear Dep. 17-18. Plaintiff claims that, as a result of the defendants' actions, she "has suffered greatly . . . including loss of earnings and mental anguish, harassment and humiliation, and other actual and compensatory damages[,]" as well as ongoing "substantial monetary and other losses." Amend. Compl. ¶¶ 11-12.

## DISCUSSION

A.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). A "material" fact is identified by the substantive law, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not simply rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248-49, but instead "must come forward with specific facts showing

4

that there is a *genuine issue for trial*." <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (emphasis in original and quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a court views the facts and reasonable inferences drawn from the parties' submissions in the light most favorable to the nonmoving party. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249-250 (citations omitted) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."); <u>id.</u> at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . .").

B.     Analysis

1.     Plaintiff's Failure-To-Promote Claims.

Plaintiff claims that "defendants limited the employment opportunities of American Indians and women employees while giving preference to and protecting white and non-American Indian employees and applicants for employment. . . . Specifically, plaintiff met all qualifications for promotion to the position; defendants had a vacancy, but pursuant to their policy of limiting the employment opportunities of Native American women, defendants denied the plaintiff promotion to the vacant Lieutenant position." Amend. Compl. ¶¶ 8-9. Thus, plaintiff alleges a failure-to-promote claim premised on Title VII, § 1981, and § 1981a.[4]

---

[4] "The elements of a claim under § 1981 . . . mirror those of Title VII[,]" <u>McCray v. Pee Dee Reg'l Transp. Auth.</u>, 263 F. App'x 301, 305 (4th Cir. 2008) (unpublished decision), and courts therefore analyze discrimination claims premised on these provisions of law by applying the same legal framework. <u>See</u> <u>Bryant v. Bell Atl. Md., Inc.</u>, 288 F.3d 124, 133 n.7 (4th Cir. 2002). Section 1981a sets forth the provisions for damages in cases of intentional discrimination in employment, particularly as it applies to awards of compensatory and punitive damages.

5

Among numerous other contentions,[5] defendants assert that ultimately they are entitled to summary judgment on the merits of plaintiff's discrimination and retaliation claims because she cannot show that the legitimate, nondiscriminatory reasons defendants proffered for any adverse employment action are pretextual.

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional . . . [race, color, or gender] discrimination through two avenues of proof.

First, a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that . . . [unlawful] discrimination motivated the employer's adverse employment decision. The employee, however, need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor. In such cases, historically referred to as "mixed-motive" cases, it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons.

. . .

The second method of averting summary judgment is to proceed under a "pretext" framework [as set forth in the Supreme Court's seminal case <u>McDonnell Douglas Corp. V. Green</u>, 411 U.S. 792 (1973)], under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination. . . . If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Assuming the employer meets this burden of production, . . . the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination. At this point, the burden to demonstrate pretext merges with the

---

[5] Defendants present several arguments about the viability of some of plaintiff's claims, including, *inter alia*, whether plaintiff has fully exhausted her claims and whether she may proceed under § 1981 without also having alleged a claim under 42 U.S.C. § 1983. <u>See</u> Defs.' Mem. 21-25. Because the court finds that defendants are entitled to summary judgment on the central question of whether plaintiff suffered unlawful discrimination or retaliation, the court pretermits discussion of these arguments.

ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination. Thus, the <u>McDonnell Douglas</u> framework serves to bring the litigants and the court expeditiously to this ultimate question.

<u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc) (internal citations and quotation marks omitted).

Plaintiff appears to rely on the "second method," as she has not produced any direct evidence of discrimination by Sheriff Sealey and, furthermore, she employs the "pretext framework" in her arguments to avert summary judgment. <u>See</u> Pl.'s Resp. 8-13. Thus, the court will utilize the burden shifting framework of <u>McDonnell Douglas</u> in analyzing plaintiff's claims. Pursuant to this framework, plaintiff must first establish a *prima facie* case with respect to each of her claims that she was denied a promotion because of her "sex, race, and color." Amend. Compl. ¶ 43.

To establish a *prima facie* case of failure to promote under Title VII, plaintiff is required to show that: (1) she is a member of a protected group; (2) she applied for a specific position; (3) she was qualified for the position; and (4) she was rejected "under circumstances that give rise to an inference of discrimination." <u>Williams v. Giant Food, Inc.</u>, 370 F.3d 423, 430 (4th Cir. 2004).[6] If plaintiff is able to establish a *prima facie* case with respect to any of her failure-to-promote claims, defendants must then produce evidence that any adverse employment decision was supported by legitimate, nondiscriminatory reasons. This "burden is one of production, not of persuasion." <u>Williams v. Staples, Inc.</u>, 372 F.3d 662, 668 (4th Cir. 2004). The court is not charged with

---

[6] The Fourth Circuit has previously held that, in order "to satisfy the fourth prong, [a plaintiff] need only show that the position was filled by a . . . applicant [outside the plaintiff's protected class]." <u>Carter v. Ball</u>, 33 F.3d 450, 458 (4th Cir. 1994). Hence, the Fourth Circuit recently stated, in an unpublished opinion, that a plaintiff may establish a *prima facie* case by showing that the position for which she applied and was rejected "remained open or was filled by similarly qualified applicants outside the protected class." <u>Williams v. Carolina Healthcare System, Inc.</u>, 452 F. App'x 392, 395 (4th Cir. 2011) (citing <u>Page v. Bolger</u>, 645 F.2d 227, 229-30 (4th Cir. 1981)). Even more recently, in another unpublished opinion, the Fourth Circuit again articulated the *prima facie* test in a failure to promote case as it is set out in <u>Giant Food, Inc.</u> <u>See</u> <u>McCaskey v. Henry</u>, __ F. App'x __, __, 2012 WL 120072, *1 (4th Cir. Jan. 17, 2012).

evaluating the soundness of the employer's decision. See Muhammad v. Giant Food, Inc., 108 F. App'x 757, 765 (4th Cir. 2004) (unpublished decision) ("When courts are evaluating the legitimacy of the employer's stated reason for the employment action, the question is not whether the employer's stated reason was a good business decision, but whether the stated reason was the real reason.").

If defendants satisfy their burden of producing legitimate, nondiscriminatory reasons for their actions, the burden shifts back to plaintiff to "demonstrate by a preponderance of the evidence that the reason articulated by [defendants] was not its true reason for [deciding not to promote plaintiff] but was instead a pretext for . . . discrimination." Staples, Inc., 372 F.3d at 669. In the face of "substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action," the plaintiff cannot rely merely on her "own assertions of discrimination." Adams v. Trustees of the University of N.C.-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011). Plaintiff can meet her burden by "showing that [defendants'] proffered reason is not worthy of belief." Id. In the failure to promote context, a plaintiff "can prove pretext by showing that [s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006).

Importantly, however, it is not enough to simply present evidence impugning the veracity of defendants' proffered reason for its adverse employment decision. Plaintiff must adduce some evidence supporting her theory that discrimination was the actual basis for the adverse employment decision. See Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004) (internal quotations and citations omitted) ("Simply because Love-Lane presents evidence that the defendants' justification for their adverse employment decision may be false does not mean that Love-Lane's evidence

demonstrates pretext for race discrimination. The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [Love-Lane's] proffered reason . . . is correct. It is not enough to disbelieve the defendants here; the fact-finder must believe Love-Lane's explanation of intentional race discrimination.").

a. Plaintiff's *prima facie* showing

Defendants contend that plaintiff has not satisfied her initial burden of demonstrating a *prima facie* case of discriminatory failure-to-promote. Defendants first argue that plaintiff has not shown that she applied for specifically each position for which Sheriff Sealey promoted the named comparators. See Defs.' Mem. 27. Indeed, plaintiff testified in her deposition that, other than her letter to Sheriff Sealey, she did not apply for any specific lieutenant position. Locklear Dep. 95-96. Plaintiff's admission is not necessarily fatal to her *prima facie* showing, however.

> If an employer has a formal system of posting vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory failure to promote. In such a circumstance, the employee's general requests for advancement are insufficient to support a claim for failure to promote. . . . On the other hand, if the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had applied for a specific position.

Giant Food, Inc., 370 F.3d at 430-31 (citations omitted). In this case, it is not clear that each of the vacant lieutenant positions was actually posted. Sheriff Sealey at best could only say that whether a vacant position was posted depended on the position itself, but that "most" of the positions were posted, and he described a promotion process in which he largely depended on the counsel and recommendations of his immediate subordinate officers when determining whom to consider for promotion. Deposition of Sheriff Kenneth Sealey ("Sealey Dep.") 10-13, ex. 5 to Defs.' Mem.

9

Given the equivocal nature of Sheriff Sealey's description of the vacancy posting and application process, the court concludes that a material fact issue exists regarding whether plaintiff applied for every lieutenant vacancy, or whether she was required to specifically apply for each vacancy in order to avail herself of the protections of Title VII and § 1981. Accordingly, the court finds that plaintiff has not failed to satisfy her *prima facie* burden due to her purported failure to provide separate applications for each lieutenant vacancy described in her response.

Defendants next argue that plaintiff has not demonstrated that she was qualified for any promotion which she now asserts she was discriminatorily denied. Defs.' Mem. 28. However, defendants appear to focus on why plaintiff was less qualified for certain lieutenant positions than the officers that received the promotions. Defendants have not produced any document bearing a job description in order to show that plaintiff simply was not qualified for a given position. Thus, plaintiff's testimony that she was qualified for the positions, coupled with Sheriff Sealey's testimony that he believed plaintiff should have been promoted to the rank of lieutenant along with all of his First Sergeants, suffices for the court to conclude that an issue of material fact exists regarding whether plaintiff was qualified for the subject positions. Accordingly, plaintiff has at least satisfied her initial burden of demonstrating that she applied and was qualified for the subject lieutenant positions. Thus, plaintiff has established a *prima facie* case of discriminatory failure-to-promote.[7]

---

[7] In pursuing her failure-to-promote claim, plaintiff has named eight comparators who she alleges were treated more favorably than her due to her race or gender. Pl.'s Mem. 2. "Plaintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim. However, [where the plaintiff does name a comparator], . . . the validity of [the plaintiff's] prima facie case depends upon whether that comparator is indeed similarly situated." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (citations omitted) (unpublished decision). Plaintiff and her comparators must be "similar in all relevant respects[,]" in that they "dealt with the same supervisor, [were] subject to the same standards, and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (internal quotations omitted). Defendants focus their argument about plaintiff's supposed deficient *prima facie* showing on whether she applied for and was qualified for the promotions. Defendants do not argue that plaintiff and her comparators
(continued...)

10

b.       Pretext analysis.

In reviewing the pleadings and supporting materials, the court finds that defendants have offered legitimate, nondiscriminatory reasons for the promotions about which plaintiff complains, to wit, in each case Sheriff Sealey promoted a candidate with specialized experience or qualifications which, in Sheriff Sealey's judgment, made that officer a superior candidate for the position.  See Defs.' Mem. 9-15; Sealey Aff. ¶¶ 14-17.  Thus, the burden shifts back to plaintiff to demonstrate that defendants' given reasons are pretext for discrimination.

Plaintiff primarily attempts to surmount this hurdle by arguing that, because of her tenure with the Department, she was at least equally or more qualified for the positions awarded to various less senior male employees.  Pl.'s Mem. 2-4.  Plaintiff also argues that defendants are now improperly relying upon "subjective" bases for Sheriff Sealey's decisions to promote others.  Id. at 10-13.  The court will address these overarching arguments before examining each of the purportedly discriminatory failures-to-promote in turn.

First, it is manifest that mere longevity in a given position is not, and in most cases should not be, the deciding factor when considering a promotion, especially where the promotion concerns a position with different duties requiring different knowledge and skill sets.  Sheriff Sealey clearly did not consider longevity as the exclusive, or even most important, factor in his decisions to promote.  Sealey Aff. ¶ 4.  It is entirely reasonable that an employer may favor a candidate's unique

---

[7](...continued)
were not "similarly situated" for purposes of assessing plaintiff's *prima facie* burden.  To the extent defendants distinguish plaintiff from her comparators, the focus is on the employment experience of the comparators which rendered them more qualified for promotion than plaintiff.  These arguments are relevant to the court's pretext analysis.  Thus, the court assumes, *arguendo*, that plaintiff is similarly situated to her comparators because, prior to their promotions, they held a similar rank as plaintiff, worked in the same Department, and had the same supervisor in Sheriff Sealey.

experience with the functions of a particular position more than simply the candidate who has been around the longest. See Hall v. Forest River, Inc., 536 F.3d 615, 620 (7th Cir. 2008) ("Years of experience, however, are not necessarily determinative of qualifications for a promotion."). Thus, the court does not subscribe to plaintiff's apparent theory that seniority within the larger Department equates with competency or qualification for a particular position within the Department.[8]

Plaintiff also argues that "[w]here a defendant relies upon subjective criteria by which to determine whether a promotion is granted, the Plaintiff's showing of this subjectivity is sufficient to overcome her burden on pretext." Pl.'s Mem. 12 (citing Wesley v. Arlington County, 354 F. App'x 775 (4th Cir. 2009)). Plaintiff does not provide a pinpoint citation to a specific portion of the unpublished opinion which she cites for this proposition. Moreover, upon review, Wesley does not reach such a conclusion and is otherwise clearly distinguishable. Wesley concerned a Title VII plaintiff's appeal of a district court's grant of summary judgment to the employer based upon its finding that the plaintiff had failed to satisfy her *prima facie* burden by demonstrating that she was qualified for the promotion which she had sought. Id. at 776-77. The district court also considered, in the alternative, whether the legitimate, non-discriminatory reasons given by the defendant for failing to promote the plaintiff were pretextual. Id.

The Fourth Circuit determined that plaintiff had demonstrated she was qualified for the

---

[8] Plaintiff also appears to rely upon a vague assertion that she trained many of those promoted ahead of her as evidence of her superior qualification for a lieutenant position. Pl.'s Mem. 4, 12. However, the evidence supporting this aspect of her claim is simply too underdeveloped to count it as significant in the court's pretext analysis. Plaintiff cites to two excerpts from her own deposition as evidence of her training of all those promoted ahead of her. See Pl.'s Mem. 4 (citing to pages 96 and 120 of her deposition). In one instance she testified that she had "trained most of" the men promoted to lieutenant since she had requested such a promotion. Locklear Dep. 96. In another instance, she testified that she trained First Sergeant Joey Hucks, who is not one of the men identified by plaintiff as having been promoted to lieutenant, "at the jail." Id. at 120. Plaintiff does not explain what type of training she provided, when she purportedly trained each of the men, and how that fact, even if true, rendered her better qualified for the positions which those men eventually received through promotion.

12

position because she met "the minimum objective criteria to be eligible for promotion to the rank of Captain." Id. at 779. As to the pretext analysis, the court determined that plaintiff produced sufficient evidence to undermine the defendant's proffered reasons–the plaintiff's supposed lack of "experience and capabilities" possessed by the promoted male candidates and problems with plaintiff's performance–for denying plaintiff a promotion. Examples of this evidence included testimony by a senior officer that plaintiff, a firefighter, "had at least as much real firefighting experience as did white males promoted by the Fire Chief" and that plaintiff's position was historically a "stepping-stone to Captain." Id. at 781. Moreover, the court was concerned that defendant appeared to value every qualification and certification possessed by those promoted while discounting those held by plaintiff, without any objective basis for those distinctions given the position at issue. Id. at 781-82 ("The purported importance of some marginally relevant qualifications and disregard of other, seemingly pertinent aspects of [plaintiff's] career raise a genuine question of material fact as to whether the overall set of criteria now set forth is an accurate picture of the decisional framework in place at the time.").

As to defendant's articulated concern about plaintiff's performance, the Fourth Circuit found this basis "suspect" because, although defendant relied upon two distant "items" in plaintiff's personnel file to justify the decision not to promote her, the Chief himself testified that he did not consider these two negative "items" when deciding not to promote the plaintiff. Id. at 782. For the Fourth Circuit, this typified the sort of "shifting explanations" to justify, after-the-fact, a decision which was possibly predicated on other grounds. Thus, the disconnect between the evidence before the court and the reasons given by the defendant precluded summary judgment.

13

In short, nowhere does the Fourth Circuit espouse in <u>Wesley</u> the principle imputed to it by plaintiff.[9] It is also a great strain on the opinion to say that the theory propounded by plaintiff may nevertheless be distilled from <u>Wesley</u>'s text. While the Fourth Circuit was concerned with the defendant's apparent after-the-fact utilization of ostensibly unrelated, subjective criteria in distinguishing candidates, the court mostly relied upon evidence the plaintiff produced which indicated that these distinguishing qualifications were not even discussed during the "roundtables" in which the Chief and his confidantes discussed promotions. <u>Id.</u> at 781. Accordingly, the court found that it was inappropriate "on summary judgment to credit the affidavits and testimony of some ["roundtable"] participants (namely the Fire Chief) over other contradictory accounts." <u>Id.</u>

<u>Wesley</u> simply does not stand for the broad rule that plaintiff reads into it. Rather, the opinion reflects the Fourth Circuit's judgment that the district court did not properly credit the considerable evidence the plaintiff produced which offered a competing account of how promotion decisions were reached. In effect, therefore, <u>Wesley</u> most naturally reflects the Fourth Circuit's simple application of the burden shifting analytical framework. Plaintiff demonstrated pretext by producing evidence which undermined her employer's given basis for the decision not to promote her. The decision had more to do with the plaintiff's evidentiary showing than with the Fourth Circuit's rejection of "subjective qualifications." Thus, in reviewing Locklear's claims, this court is mindful that, like the plaintiff in <u>Wesley</u>, plaintiff must produce sufficient evidence, apart from

---

[9] In fact, the only portion of the opinion in which the Fourth Circuit explicitly addresses so-called "subjective criteria" occurs in its discussion of the plaintiff's *prima facie* showing, in which the court was concerned with whether she had demonstrated that she was qualified for a promotion. <u>See Wesley</u>, 354 F. App'x at 779 ("[Plaintiff] urges this Court to adopt a bright-line rule preventing employers from using subjective qualifications in establishing the requirements of a job. . . . We need not decide this question here."). Here, by contrast, plaintiff is concerned with the use of subjective criteria in determining "whether a promotion is granted." Pl.'s Mem. 12. Necessarily, whether an applicant is qualified for and whether an applicant receives a promotion are fundamentally different questions, as the former goes to a plaintiff's *prima facie* showing while the latter goes to the analysis of pretext.

her own conclusions, which indicates that the bases for Sheriff Sealey's decisions to not promote her are not worthy of belief. To the extent <u>Wesley</u> does evince a concern with an employer's reliance on "subjective" qualifications, it is incumbent upon plaintiff to demonstrate how "subjective" qualifications were applied in the promotion decisions about which she complains, such that Sheriff Sealey placed undue importance on the "marginally relevant qualifications" of the promoted officers while disregarding "seemingly pertinent aspects" of her career. <u>Id.</u> at 782.

Plaintiff maintains that there are at least seven instances in which she was denied a promotion due to discrimination in favor of male officers.[10] The court will examine each promotion with which plaintiff is aggrieved.

### i.    Jimmy Hunt

Jimmy Hunt, a Native American Lumbee like plaintiff, was promoted to lieutenant by Sheriff Sealey in 2007, upon the retirement of Lt. Glenn Strickland. According to Sheriff Sealey, this is the only position about which he knew plaintiff had expressed a specific interest in promotion to lieutenant. Sealey Aff. ¶ 13. Defendants assert that Hunt was promoted to replace Lt. Strickland because of Hunt's experience filling-in for Lt. Strickland as the head of the Department's civil division during Lt. Strickland's final year on the job and because Lt. Strickland himself recommended Hunt for the job. Sealey Aff. ¶ 14. According to defendants, Lt. Strickland's duties in the civil division were among the most complex functions of the Department, particularly

---

[10] Plaintiff does not specifically allege in her amended complaint each of the instances in which she believes she was discriminatorily denied a promotion. However, in her responses to defendants' interrogatories, she identified eight males who were promoted to lieutenant despite her request for a similar promotion. Plaintiff also discusses each of these instances in her response to defendants' motion for summary judgment. Pl.'s Mem. 2-5. However, she concedes that at least one of these men, Tom Espey, was more qualified for promotion to lieutenant than was she. <u>See</u> Locklear Dep. 96; Pl.'s Resp. 2. Thus, the court will focus only on those positions for which plaintiff maintains that she was the most qualified applicant.

"collection of civil judgments," which required unique knowledge of applicable laws and accounting proficiencies.  Id.  Thus, Hunt's extensive prior experience in Lt. Strickland's precise role rendered him uniquely qualified to replace Lt. Strickland.  Moreover, Sheriff Sealey did not believe that plaintiff had any experience with the unique functions of the civil division other than "serving civil process and other papers."  Id.

In order to show that defendants' reasons are pretext for discrimination, plaintiff must show that "[s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons."  Heiko, 434 F.3d at 259.  Plaintiff offers little in the way of bolstering her own qualifications for the position relative to those of Hunt.  Instead, she appears to challenge the methodology behind Sheriff Sealey's decision to promote Hunt.

> Plaintiff maintains that her qualifications for the position, having worked in warrants for a number of years and heading the department and having had more experience with the Sheriff's Department than the selectee Jimmy Hunt, is all evidence to show that she had greater experience and was the best qualified for the position.  Defendant maintains that the plaintiff did not have specialized skills in executions.  Defendant maintains that it awarded the position to an officer who had worked closely with the outgoing Lieutenant in serving warrants and in executing judgments.  Jimmy Hunt supposedly acted as Lieutenant Strickland's assistant.  There is no evidence to indicate that Plaintiff was given the same opportunity to serve as an assistant to Strickland.  The Agency cannot maintain a system of placing male employees in positions to gain knowledge and skills which would serve as an advantage in a promotion without allowing women equal opportunity and then declare the women to be less qualified because they did not have the skills required by men in those positions.

Pl.'s Mem. 10-11.  For the reasons discussed above, plaintiff's argument that her longevity made her more qualified than Hunt to be promoted to lieutenant or to lead the Civil Division is unavailing.  Furthermore, plaintiff does not contend that defendants wrongly attributed important and relevant experience to Hunt or improperly asserted her own lack of experience in those areas.  Instead, she argues that "there is no evidence to indicate that Plaintiff was given the same opportunity to serve

as an assistant to Strickland." Pl.'s Mem. 10-11. However, plaintiff points to no evidence that she ever requested and was denied the opportunity to serve as an assistant to Lt. Strickland. Plaintiff certainly does not make such an allegation as part of her claim that she was denied training opportunities by defendants. Instead, that claim is limited to her charge that she was denied motorcycle training. Locklear Dep. 62; Pl.'s Mem. 2. Nor can it fairly be deemed "subjective" that Sheriff Sealey favored a candidate who had already served as head of the Civil Division during his predecessor's numerous absences. If anything, a candidate's prior experience in the exact position to which he is being promoted is an objective qualification in his favor. Plaintiff has not presented sufficient evidence to demonstrate a material issue of fact about whether she was better qualified than Hunt for the position or whether defendants' reasons for promoting Hunt are not worthy of belief. Thus, plaintiff has failed to show that the legitimate and nondiscriminatory reasons offered by defendants are likely pretext for intentional discrimination.

ii.    Donald Baker

Donald Baker was promoted to lieutenant in July, 2007, to fill a newly created Sexual Offender Enforcement and Investigations position. Sealey Aff. ¶ 17(a). Sheriff Sealey explains that Baker had extensive supervisory and leadership experience from his prior employment with the Pembroke, North Carolina, Police Department, where he had achieved the rank of Captain and served as the Interim Police Chief. Id. Moreover, Baker began working for the Sheriff's Department in 1995, which is the same year that plaintiff began working on the enforcement side of the Sheriff's Department. Thus, Sheriff Sealey asserts that any decision not to promote plaintiff to this position was legitimate and nondiscriminatory.

17

Apart from identifying Baker as having received a promotion, <u>see</u> Pl.'s Mem. 4, plaintiff does not address defendants' reasons supporting the decision to promote Baker. Nor, apart from her general contention that her greater longevity makes her more qualified, does she identify any particular skills, experience, or aptitude that make her more qualified than Baker for the Sexual Offender Enforcement and Investigations position. Similarly, it cannot fairly be deemed "subjective" that Sheriff Sealey valued Baker's extensive supervisory and leadership experience from his time as a high-ranking officer with the Pembroke Police Department when promoting him to lieutenant for the newly-created Sexual Offender Enforcement and Investigations position. Plaintiff has not presented sufficient evidence to demonstrate a material issue of fact about whether she was better qualified than Baker for the position or whether defendants' reasons for promoting Baker are not worthy of belief. Thus, plaintiff has failed to show that the legitimate and nondiscriminatory reasons offered by defendants are likely pretext for intentional discrimination.

iii.     Bryan Duckworth

Bryan Duckworth was promoted to lieutenant in charge of the Arson/Crime Prevention and Equipment Maintenance Division on July 1, 2007. Sealey Aff. ¶ 17(b). Sheriff Sealey asserts that Duckworth was uniquely qualified for each of the primary aspects of this position because of his significant prior involvement in Community Watch programs, his over twenty years of service as a volunteer firefighter, and his skills and experience in automobile repair, which included making repairs to Department vehicles, performing routine maintenance, and installation of electric equipment in the vehicles. <u>Id.</u>

Plaintiff's only response to Sheriff Sealey's assertions about Duckworth's qualifications is that Duckworth "did not have as much seniority with the Department as the Plaintiff when he was

given the title and position of Lieutenant. Further, he had not supervised as many people." Pl.'s Mem. 3. Plaintiff's supposed longevity notwithstanding, it is evident that Duckworth possessed unique skills which, objectively, were germane to the position for which he was promoted. Plaintiff has not presented sufficient evidence to demonstrate a material issue of fact about whether she was better qualified than Duckworth for the position or whether defendants' reasons for promoting Duckworth are not worthy of belief. Thus, plaintiff has failed to show that the legitimate and nondiscriminatory reasons offered by defendants are likely pretext for intentional discrimination.

### iv.     Elden Alford

Elden Alford was promoted to the position of Detective-Lieutenant in August of 2008. Sealey Aff. ¶ 17(c). Alford began working for the Department early in 1991, and had already served as a detective for a number of years prior to his promotion to lieutenant. Id. Thus, when a lieutenant vacancy in the Detective Division opened up, Sheriff Sealey considered Alford an ideal candidate for the position. Id. By contrast, plaintiff, according to Sheriff Sealey, was not a detective, lacked significant experience with criminal investigation, and had previously declined Sheriff Sealey's invitation to serve as a detective in the Department's Juvenile Division. Id.

Other than to identify Alford as one of the males who received a promotion to lieutenant, see Pl.'s Mem. 2, plaintiff does not challenge the basis for Sheriff's Sealey decision to promote Alford or present any argument about why she was more qualified for the Detective-Lieutenant position that Alford received. Nor can it be fairly argued that Alford's prior experience as a detective was a "subjective" qualification for the position of Detective-Lieutenant that Sheriff Sealey should not have considered. Plaintiff has not presented sufficient evidence to demonstrate a material issue of fact about whether she was better qualified than Alford for the position or whether defendants'

reasons for promoting Alford are not worthy of belief. Thus, plaintiff has failed to show that the legitimate and nondiscriminatory reasons offered by defendants are likely pretext for intentional discrimination.

v.      Darrel Little

Like Alford, Darrel Little was promoted to Detective-Lieutenant in 2008 to fill a vacancy created by attrition and a corruption scandal that had implicated several of the Department's officers. Sealey Aff. ¶ 17(c) & (d). Also like Alford, Little had already served as a detective for a number of years prior to his promotion to Detective-Lieutenant. Id.

Plaintiff only says the following regarding the promotion of Darrel Little: "Darrel Little (white male), a detective, who purportedly wanted to receive more money was given a title of Lieutenant but did not begin receiving Lieutenant pay until January of 2011." Pl.'s Mem. 3. As with Alford, Little's prior experience as a detective was clearly an objective qualification supporting his promotion to Detective-Lieutenant which distinguishes his qualifications from plaintiff in a key respect. Plaintiff has not presented sufficient evidence to demonstrate a material issue of fact about whether she was better qualified than Little for the position or whether defendants' reasons for promoting Little are not worthy of belief. Thus, plaintiff has failed to show that the legitimate and nondiscriminatory reasons offered by defendants are likely pretext for intentional discrimination.

vi.      Howard Branch

Howard Branch was promoted to Lieutenant and made Supervisor of the Juvenile Division, filling the position vacated by Sealey when he became Sheriff. Sealey Aff. ¶ 17(e). This promotion occurred in early 2005, shortly after Sealey became Sheriff, and prior to plaintiff's initial request for promotion to lieutenant. Id. Prior to his promotion, Branch had served as Sealey's second-in-

command in his capacity as Supervisor of the Juvenile Division.  Id.  Branch had also served as a detective for a number of years prior to his promotion.  Id.  Thus, when Sealey became Sheriff in 2005, he viewed Branch as the most logical and qualified candidate for promotion to Lieutenant and Supervisor of the Juvenile Division.  Id.

Other than to identify Branch as one of the males who received a promotion to lieutenant, see Pl.'s Mem. 2, plaintiff does not challenge the basis for Sheriff's Sealey decision to promote Branch or present any argument about why she was more qualified for the position that Branch received.  Indeed, plaintiff does not explain why she should have been considered for the promotion given to Branch despite the fact that she had not even requested such a promotion at the time of the promotion.  Moreover, it cannot fairly be argued that Branch's prior experience serving as the second-in-command of the Juvenile Division was a "subjective" qualification improperly considered by Sheriff Sealey when he promoted Branch to Lieutenant and Supervisor of the Juvenile Division.  Plaintiff has not presented sufficient evidence to demonstrate a material issue of fact about whether she was better qualified than Branch for the position or whether defendants' reasons for promoting Branch are not worthy of belief.  Thus, plaintiff has failed to show that the legitimate and nondiscriminatory reasons offered by defendants are likely pretext for intentional discrimination.

vii.    Richie Adams

Richie Adams was promoted to Supervisor of the Narcotics Unit in October, 2010.  Sealey Aff. ¶ 17(f).  Sheriff Sealey asserts that Adams was not given the rank of lieutenant.  Id.  Adams had spent a number of years as a detective and had previously worked in narcotics investigations.  Id.  In addition, Adams was recommended for the Supervisor position by the officer vacating that position, Lt. Charlie Revels, all of the deputies in the Narcotics Unit, and agents from other law

enforcement agencies with whom the Department collaborated.  Id.  Plaintiff, by contrast, had no prior experience as a detective or with narcotics work.  Id.

Plaintiff asserts that "Richie Adams, male and a Road Deputy, was promoted to Lieutenant to replace Charlie Revels.  He was no more qualified than the Plaintiff or any of the other female deputies there."  Pl.'s Mem. 4. Plaintiff does not contend that she had prior relevant experience as a detective or in narcotics investigations, or that defendants have erroneously characterized Adams' relevant experience.  Nor does plaintiff contend that she desired a supervisory position within narcotics even if, as Sheriff Sealey asserts, the position did not include promotion to lieutenant. Finally, it is clear that Adams' prior experience working on narcotics investigations was an objective qualification in his favor which distinguishes his qualifications from those of plaintiff.  Plaintiff has not presented sufficient evidence to demonstrate a material issue of fact about whether she was better qualified than Adams for the position or whether defendants' reasons for promoting Adams are not worthy of belief.  Thus, plaintiff has failed to show that the legitimate and nondiscriminatory reasons offered by defendants are likely pretext for intentional discrimination.

c.      Conclusion

With respect to all of her claims regarding the eight instances in which plaintiff complains that men were promoted to lieutenant ahead of her, she has failed to show that she was more qualified for such promotions or that defendants' articulated reasons for promoting those men are unworthy of belief.  Moreover, plaintiff has failed to show that Sheriff Sealey improperly relied upon overly "subjective" criteria when assessing the relative qualifications of those he promoted to lieutenant.  Thus, plaintiff has failed to carry her burden of demonstrating that the legitimate, nondiscriminatory reasons given for the failure to promote her are likely pretext for discrimination,

and defendant is entitled to summary judgment on plaintiff's discriminatory failure-to-promote claims.

2.      Plaintiff's Disparate Treatment Claim

Plaintiff vaguely alleges that she received disparate treatment from defendants on the basis of her race and sex.  Amend. Compl. ¶ 6 ("Defendants have refused to permit her to train or to take advantage of training and other benefits of employment based upon race and gender . . . .").  The amended complaint does not state what "training or other benefits of employment" were discriminatorily denied plaintiff.  Plaintiff's response to the motion for summary judgment clarifies her belief "that she was denied motorcycle training because of her gender."  Pl.'s Mem. 2. Moreover, plaintiff's deposition confirms that the denial of motorcycle training was the only instance in which she was denied requested training.  Locklear Dep. 62.  Plaintiff's deposition further confirms that she does not require the use of a motorcycle in the day-to-day performance of her duties in the warrant section, and that she had only ever ridden a Department motorcycle for purposes of parades and working funeral processions.  Id. at 60.

In order to establish a *prima facie* case of disparate treatment based on gender, "plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action[]; and (4) that similarly-situated employees outside the protected class received more favorable treatment."  Gerner v. County of Chesterfield, Va., 674 F.3d 264, 266 (4th Cir. 2012) (internal quotation omitted).[11]  "An adverse employment action is a discriminatory act which

_____

[11]   The Fourth Circuit has previously articulated a gloss on this standard for discriminatory denial of training cases.  See Thompson v. Potomac Electric Power Co., 312 F.3d 645, 649-50 (4th Cir. 2002) ("To establish a prima facie case of discriminatory denial of training, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination.").

adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." <u>James v. Booz-Allen Hamilton, Inc.</u>, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations and citations omitted). In a disparate treatment discrimination case, "the plaintiff has the higher burden of showing an 'ultimate employment' action that affects 'hiring, granting leave, discharging, promoting, and compensating.'" <u>Brockman v. Snow</u>, 217 F. App'x 201, 205-06 (4th Cir. 2007) (quoting <u>Page v. Bolger</u>, 645 F.2d 227, 233 (4th Cir. 1981)).

Numerous courts have held that mere denial of a training opportunity is not a sufficiently adverse employment action to satisfy the plaintiff's initial *prima facie* burden, particularly where there is not a clear nexus between the denial of training and the employee's ability to perform her job functions, receive pay increases, or advance her career. <u>See</u> <u>James</u>, 368 F.3d at 376-77 (finding that denial of opportunity to attend conference was not adverse employment action); <u>Pagan v. Gonzalez</u>, 430 F. App'x 170, 172 (3d Cir. 2011) (unpublished decision) ("denial of the training was not an adverse employment action because there was no evidence that the Appellant's work suffered or that her advancement or earning potential was affected"); <u>Webb v. North Carolina Dept. Of Crime Control and Public Safety, Alcohol Law Enforcement Division</u>, 658 F. Supp.2d 700, 712 (E.D.N.C. Sept. 11, 2009) (finding that decision to deny employee training in "Driving Instructors School" or Spanish language was not actionable because it did not impact the plaintiff's "pay, benefits, or employment"); <u>Guion v. Mabus</u>, 2012 WL 1340117, *9 (E.D.N.C. April 17, 2012) (allegations regarding failure to provide training "fail to state a claim because plaintiff does not allege how either of those actions were so adverse as materially to alter the terms or conditions of his employment"). In this case, plaintiff admitted in her deposition that she did not need a motorcycle to perform her job. Nor has she alleged that the inability to receive motorcycle training somehow affected her

24

salary or potential for advancement. Thus, plaintiff has failed to show that the supposed discriminatory denial of motorcycle training constitutes a materially adverse employment action and, therefore, she has not established a *prima facie* case of disparate treatment based on her gender.[12]

3. Plaintiff's Retaliation Claims.

Plaintiff vaguely alleges in her amended complaint that defendants have retaliated against her for her complaints of unlawful discrimination. Amend. Compl. ¶ 6 ("Defendants have refused to permit her to train or to take advantage of training and other benefits of employment based upon race and gender and in retaliation against employees including the plaintiff who complain about defendants' racial and gender practices."). The amended complaint does not clarify which alleged actions of defendants plaintiff considers retaliatory. However, considering all of the pleadings and deposition excerpts submitted to the court, and indulging plaintiff's failure to clearly outline her claim, the court perceives two possible claims of retaliation set forth in the materials: the denial of training allegation discussed above and plaintiff's claim that her "responsibilities over the Warrant Division changed after she filed a charge of discrimination with the [EEOC]." Pl.'s Mem. 2. Apart from their contention that plaintiff failed to exhaust any retaliation claim she now purports to bring, defendants claim that any such claims are without merit. Defs.' Mem. 25.

Title VII "prohibits retaliation by a private employer against an employee because she 'has opposed any practice made an unlawful employment practice' by Title VII." Bonds v. Leavitt, 629

---

[12]    Even under the seemingly more lenient standard for "discriminatory denial of training" set forth in Thompson, plaintiff has failed to establish a *prima facie* case. Plaintiff testified that Sheriff Sealey had instructed that "everybody that rode the motorcycle at the sheriff's department had to go to the motorcycle school." Locklear Dep. 59. Because plaintiff also admits that she was not required to ride a motorcycle as part of her job, she has not shown that she was eligible for the training. Likewise, considering that plaintiff has not specifically identified any similarly situated males who received the training yet did not require the use of a motorcycle to perform their job, plaintiff has not shown that she was denied motorcycle training "under circumstances giving rise to an inference of discrimination." Thompson, 312 F.3d at 649-50.

F.3d 369, 384 (4th Cir. 2011) (quoting 42 U.S.C. § 2000e-3(a)).

> To succeed on a retaliation claim, a plaintiff must prove that (1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action. . . . An adverse action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits. In addition, [plaintiff] must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotations and citations omitted). As with Title VII discrimination claims, "[i]f a plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and a defendant offers a non-discriminatory explanation for his [action], the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext." Id. Within this framework, the court will consider each of plaintiff's claims of retaliation.

a.      Plaintiff is denied motorcycle training.

For the reasons set forth above, to the extent plaintiff intends to present a claim of retaliation based upon the denial of motorcycle training, she has failed to establish a *prima facie* case of retaliation because the denial of motorcycle training was not a materially adverse employment action within the context of plaintiff's job. Moreover, given the vagueness of plaintiff's claim, it is not apparent that there is any causal connection between some protected activity of plaintiff and the denial of motorcycle training. Although plaintiff alleges in her amended complaint that she filed EEOC charges in May 2005 and May 2006 "challenging defendants' refusal to promote and their retaliation against the plaintiff," Amend Compl. ¶ 7, she indicated in her responses to defendants' interrogatories that she had filed only one EEOC charge, dated May 4, 2007. See ex. 4 to Defs.

Mem. That EEOC charge succeeded plaintiff's denial of motorcycle training and, indeed, includes

the claim she was denied motorcycle training among its allegations of discrimination. <u>See</u> ex. 1 to

Defs.' Mem. Thus, assuming plaintiff's answers to defendants' interrogatories are truthful, the

denial of motorcycle training could not be causally related to plaintiff's filing of her EEOC charge.

In any event, plaintiff has failed to carry her *prima facie* burden considering her failure to

demonstrate a materially adverse employment action due to the denial of motorcycle training.

    b.  The Department alters operations in the Warrants Division.

  Plaintiff argues as follows:

> In her capacity as the head of the Warrants Division, she was responsible for
> answering inquiries about the warrants and taking care of any responsibilities related
> to the warrants, including the service of the warrants. Plaintiff's responsibilities over
> the Warrants Division changed after she filed a charge of discrimination with the
> [EEOC]. While she was in charge of the Warrant Division, she supervised a number
> of Deputy Patrol Officers.

Pl.'s Mem. 2 (citation omitted). Plaintiff alluded to this circumstance during her deposition

testimony.[13] Plaintiff does not allege that this purported change in her duties affected her

compensation or materially altered the terms of her employment. Indeed, Sheriff Sealey testified

that plaintiff was still the supervisor of those serving warrants and did not lose any of her "status"

due to the change. Sealey Dep. 115-16. Thus, it is not clear how this change constituted a

materially adverse employment action for purposes of plaintiff's retaliation claim.

  Nevertheless, even assuming that this change was sufficiently adverse, defendants have

---

[13] Specifically, plaintiff testified, "[n]ow before then - after I filed the EEOC complaint, they busted up the warrant . . . ." Locklear Dep. 13. Unfortunately, this is the extent of plaintiff's deposition testimony on this subject that has been provided to the court. Neither party has provided the court with the continuation of plaintiff's testimony, including the remainder of the very sentence in which she first mentions the "busting" of the Warrants Division. This failure to provide a fuller picture of plaintiff's testimony on this key aspect of one of her claims, coupled with the failure to more fully describe the particulars of her claim in her amended complaint and response to the motion for summary judgment, does not reflect well on plaintiff's estimation of her own claim.

proffered legitimate, nondiscriminatory reasons for the change in the Warrants Division. Sheriff Sealey testified that the change in the Warrants Division was because the Department was getting "overwhelmed" with warrants that were not getting served and wanted to try devoting increased cumulative manpower to serving warrants. Sealey Dep. 114. Sheriff Sealey testified as follows:

> We said, "If we get - if we pull the four individuals that serve the warrants, put them on a shift, let Sergeant Locklear be in charge of all four shifts to get the warrants served, making sure that we - all 40 deputies - yeah, I believe it was added, there would be 40 deputies, ten per shift. That way we could get more warrants served.
> We tried it a few months. It did not work because we were not getting as many warrants served with the 40 as we were with the ones that we were serving. And so we went back to our regular warrant squad, is the reason - at that time, we were overwhelmed with warrants. And we still get overwhelmed with warrants now.

Id. at 115. Thus, the evidence establishes that there was a legitimate, nondiscriminatory reason for the temporary change in the Warrants Division. Plaintiff has not offered any evidence to suggest that defendants' legitimate, nondiscriminatory reason for temporarily altering how the Department served warrants was pretext for retaliation, and her unadorned suspicion is simply not enough to support such a conclusion. Accordingly, defendants are entitled to summary judgment on this claim of retaliation.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment (DE # 24) is GRANTED as to all claims and the amended complaint is DISMISSED. The Clerk is DIRECTED to close this case.

SO ORDERED, this the 22nd day of May, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge

28